First case on our docket today, January 18, 2011, is agenda number seven, Hill v. Walker, case number 110215. Counsel for the appellant? May I please the court? I'm Sarah Ansari from Jenner and Block on behalf of appellant Mr. William Hill. Your Honors, this case arises on Mr. Hill's pleadings. The circuit court erred in dismissing Mr. Hill's complaint under Section 2615, and the Fifth District erred in affirming that dismissal. The Fifth District erred because Mr. Hill alleged the Illinois Prisoner Review Board changed the standard by which parole was granted in violation of the ex post facto clause. These allegations must be taken as true. The Fourth District in Gansey v. Washington decided the exact same issue and correctly held that allegations that the board's changed standards violate the ex post facto clause are sufficient to state a claim upon which relief can be granted. Mr. Hill is not seeking parole here. He only requests the opportunity to prove his allegations. Mr. Hill alleges three things in his complaint. First, that the board's adoption of a new standard created a significant risk of increasing Mr. Hill's punishment in violation of the ex post facto clause. How does that increase the sentence, or does it increase the sentence? Your Honor, at this point we don't know if the sentence is actually going to be increased. So it's not affected, is it, in any way? His sentence isn't affected. However, the United States Supreme Court in Lindsay v. Washington stated that there still can be a violation of the ex post facto clause even if the maximum and minimum sentences do not change. Mr. Hill, second, he argues that the statutory change in the timing of parole hearings created a significant risk of increasing his punishment, also in violation of the ex post facto clause. And finally, Mr. Hill argues that the board's unfair hearing procedures violated the due process clause. How can there be a right to anything based on the very discretionary nature of parole? Although parole is discretionary, a prisoner can state a claim. Although parole is discretionary, prisoners do still have rights against ex post facto laws, the United States against an ex post facto law being applied to them. The United States Supreme Court in Garner v. Jones stated that the presence of discretion does not displace the protections of the ex post facto clause. So therefore, even in a discretionary system, a completely discretionary system, there's still the danger that a legislature can disfavor certain persons after the fact. And the United States Supreme Court held as such. Where is the law here? I mean, don't the constitutions prohibit ex post facto laws? They do, Your Honor. And how is this a law? Isn't this an unwritten policy that's being challenged? That is correct, Your Honor. It is an unwritten policy that is being challenged here. How is it a law, then? What is happening in this case, Mr. Hill alleges in this case that the board was influenced by directives from former Governor Thompson and former Cook County State's Attorney Daley, that what the board, the directives are essentially creating an unwritten law that the legislature is not permitted to do. And they're still in violation of the ex post facto clause, even if the law is not written down. An unwritten policy can still violate the ex post facto clause, as the Fourth District held in Gansey v. Washington. Was that really discussed in Gansey? It was, Your Honor. In Gansey, Mr. Hill here makes the same allegations that Mr. Gansey did in Gansey v. Washington. Mr. Hill states that the board changed its standards, the standards it used when determining parole, and that essentially rejected prisoners convicted of serious offenses for parole. And what this Fourth District held in Gansey v. Washington is that is sufficient to state a claim that Mr. Gansey should be able to conduct discovery to prove his allegations, and that is exactly what Mr. Hill asks for in this case. Your Honors, the Fourth District's holding in Gansey is supported by the United States Supreme Court decision in Garner v. Jones. As stated before, Garner holds that the, states that the presence of discretion in the parole system doesn't immunize changes in parole standards from review. Garner distinguishes between two types of ex post facto claims related to parole. Claims that a state retroactively enacts parole procedures that might have the effect of preventing or delaying the parole board from exercising any discretion, and claims that the parole board changed the way it exercises discretion. Mr. Hill alleges here, the former, that the parole board is the new standard, is in effect preventing the parole board from exercising discretion or delaying it from exercising its discretion. The Fifth District mischaracterized Mr. Hill's allegations, that his allegations only allege a change in discretion. But reading Mr. Hill's pro se complaint, it is clear that he alleges that the board isn't exercising discretion and that there is, the board essentially adopted a new rule, an unwritten rule, that is categorically denying prisoners in a certain class parole. Mr. Hill only asks the opportunity to conduct discovery in this case. He has stated a claim as was held in GNCV Washington. Mr. Hill's second, Mr. Hill's second argument is that the statutory change in the timing between parole hearings from one year to three years effectively violated, caused a significant risk, caused a significant risk of increasing his punishment in violation of the ex post facto clause. Mr. Hill sufficiently alleged that this change created a significant risk of increasing his own punishment. The United States Supreme Court in California v. Morales determined that a statute, that whether a statute changing the timing between parole hearings violates the ex post facto clause can be determined examining several ameliorating characteristics in the statute. One of those characteristics that the Morales court examined was whether the statute was broad in scope and it determined because the statute only applied to a very narrow class of prisoners that the statute would probably, would not violate the ex post facto clause. This court in Fletcher v. Williams based its decision on Morales and determined that the statute at issue here did not violate the ex post facto clause based on several ameliorating characteristics in the statute. However, this court found that the scope of the statute in this case was not constitutionally determinative. The fact in this case is that the scope applies to all Illinois prisoners unlike in Morales where the statute only applied to a prisoner, to a certain, a narrow class of prisoners. We ask this court today to reconsider Fletcher in light of a later United States Supreme Court decision in Garner v. Jones. In Garner v. Jones the court held that the scope of the statute was actually an important factor and determined that although the prisoner was unlikely to prove that he, that there was a significant risk of increased punishment, the fact that the statute had such a broad scope was, caused the court to remand the case to the 11th Circuit for further findings about whether the statute actually had, was causing a significant risk of increased punishment for the prisoner. And we ask this court to do that today, to reconsider Fletcher v. Williams in light of Garner v. Jones and consider the scope of the statute in this case as it didn't consider in Fletcher v. Williams. In your honors, for our third argument, Mr. Hill, we argue that Mr. Hill stated a claim that the board's unfair hearing procedures violated the due process clause. We would like to stand on our briefs at this time on that argument. Any further questions? Is Garner the key focus as far as the analysis in this case on how to sort out the discretion issue and the ex post facto violations? Is Garner the case? Well, Garner didn't determine, Garner was determining a statutory change in criteria, the one year to three year. So while Garner is instructive and does make a lot of statements about discretion in dicta, it's not the key case to rely on because it's not actually, it's instructive, but it isn't, the fact is that Garner isn't determining a change in a standard or an unwritten policy, it's determining an actual statutory change. The case that should be examined very closely is Gansey v. Washington. In that case, the fourth district held that an unwritten rule, exactly what Mr. Hill alleges here, that the prisoner states a claim in that case by alleging a change in a standard. If I understand your argument correctly, I thought you indicated earlier as well as the briefs that whether it's a statutory procedure or basically a de facto unwritten rule that it's analyzed the same way on whether or not there's an ex post facto violation. It is, Your Honor. It is analyzed the same way. So Garner would be applicable in that case? Right. Garner is applicable. Thank you. Further questions? Thank you, Your Honor. Thank you, Counsel. May it please the Court, Counsel, Timothy McPike, Assistant Attorney General, on behalf of Lisa Madigan, Attorney General of Illinois, representing the appellees, Roger Walker, Director of the Illinois Department of Corrections, and George Montes, Chairman of the Prisoner Review Board. Mr. Hill's argument that the denial of parole violated ex post facto prohibitions fails because he failed to state a claim, and he failed to state a claim because he did not allege a change in any law. The law for ex post facto purposes means a binding regulation or a statute, and under centuries of American jurisprudence, that applies only to written laws. As this Court held in Fletcher, the purpose of the ex post facto prohibition is to prevent the legislature or a department exercising its authority under, to promulgate regulations, to enact vindictive and arbitrary legislation punishing someone after the crime has been committed for an increased sentence. And the second reason for an ex post facto prohibition is to give fair warning about the meaning of a statute so that a person can be released from prison. And a person can rely on that statute, and unless the statute is subsequently amended. So because Mr. Hill failed to allege, failed to cite to any regulation or statute, he failed to allege an ex post facto claim. Mr. McPike, since parole decisions are very discretionary, is mandamus really appropriate here? He failed to allege a mandamus claim because he failed to allege that the board failed to exercise its discretion. A decision to deny parole is not a failure to exercise discretion, it's an exercise of discretion. So he failed to state a claim as to mandamus also. The, even assuming that an unwritten rule could be subject to ex post facto prohibitions, and it is not. He nevertheless, this court would not reach the issue because even assuming there had been a change, Mr. Hill could not show that he would be more standard than under the current standard. He committed two murders for hire, and as the Seventh Circuit said in Glasgow, you can't even reach the constitutional issue until the prisoner can first show that he was more likely to get parole under the current standard than under the prior standard. So for those reasons, Mr. Hill alleged no claim, failed to state a claim, as to his denial of parole violating ex post facto. Second, Mr. Hill's argument that this court should reconsider Fletcher fails, and this court need not reconsider Fletcher. They argue that Garner requires in each case an individual consideration of the prisoner's sentence, and whether the change in the statute would be more appropriate to the prisoner's sentence by giving him a longer sentence. Now Garner, the distinction between Garner and this case, and between Garner and Fletcher, is that this court held in Fletcher that the change in section 335F of the criminal code, that section provides, that section changed from the time Mr. Hill was convicted until his parole came up, that section was changed to provide that the board could set the next hearing date up to three years in advance, if it found that there was no likelihood that he was, the prisoner was going to receive parole sooner than that. So that was a statutory change. However, this court held in Fletcher that considering the ameliorating aspects of that statute, and also considering the board's binding regulation, which is section 20 Illinois Administrative Code 1610- excuse me, dot 100, that regulation is binding. And that regulation provides that the prisoner may receive parole an earlier hearing if he can show changed circumstances. Now the difference between Garner, the U.S. Supreme Court case, and Fletcher, this court's case where it held that there is no significant ex post facto effect, is that in Garner there was only a non-binding policy statement by the Georgia board that said a prisoner could ask for reconsideration sooner. In Garner it was a change that said the board could go eight years, much longer, without a hearing. And it was only a written but non-binding policy of the board in Georgia that a prisoner could ask for reconsideration. So if you read the Garner case, the Garner case says there's a fact question. The actual change of law in Garner was a binding regulation of the Georgia board that changed the length of time. Council for the appellant misspoke. It wasn't a statute. It was a regulation in Garner. And a non-binding policy that said the prisoner could ask for reconsideration sooner. Under Illinois law, and the law at the time that this court decided Fletcher, it's a binding change in statute, section 335F, that says the board can set the hearing date three years in advance. And a binding regulation, and that's the distinction between Illinois law and Garner, a binding regulation that says the prisoner can ask for reconsideration sooner. So unlike Garner where there was a fact question, there was a non-binding question. Is the board following its non-binding policy? That fact question had to be answered to determine whether the change in law, the binding regulation, that it made a longer period of time. That was a fact question. How is the change in law operating? Is it actually, in fact, increasing the time that the prisoner may be, there may be a significant risk that the prisoner may be released? And that was a fact question. Prisoner sentences lengthened. There can be no fact question under Illinois law because there is a binding regulation that says, yes, the prisoner can come back and ask for reconsideration sooner if he can show changed circumstances. So because, so the Fletcher decision said, there can be really, under this law, no prisoner who can show a significant risk of their term of incarceration being increased because there is binding law here that says, yes, the board can increase the length of time between your hearing, but you also have the right to come in and show a hearing, ask for a hearing sooner. In Garner, that was a fact question. Could you, in fact, come in and ask for a hearing sooner or not? Does the board follow its non-binding policy? In Illinois, the board would be violating its regulation and hence be refused to allow a prisoner to make a showing that he deserved a sooner hearing. And then again, even assuming that the court should reconsider Fletcher, which we do not believe it needs to do, again, here, Mr. Hill, as I argued earlier, could not make a showing that he's entitled to a sooner hearing because he committed two murders for hire. In Garner, the board would be violating its non-binding policy. In Tiller, this court's Supreme Court decision in Tiller, and in the Seventh Circuit's decision in Walker v. Prison Review Board, those courts held that the length of the sentence and the seriousness of the offense are sufficient, is all you need under due process. Due process no longer applies. And in Garner, the board would deny parole. Those are all you needed to show for the Prisoner Review Board to deny parole indefinitely. So under the facts of this case, the Prisoner Review Board could not only deny parole indefinitely, but could deny a sooner reconsideration, sooner than three years, indefinitely, merely on the fact, not the mere fact, but the significant facts, that Mr. Hill committed two murders for hire and was sentenced to an extremely long sentence. So Mr. Hill cannot make a showing, and therefore he failed to state a claim, as to the ex post facto effect of section 335F of the criminal code. And third, Mr. Hill's arguments that the board violated due process by considering his overdue and death sentence, and by his allegations that there was a bias in the process. The simple answer is, under this court's decision in Hanrahan, as confirmed by the Seventh Circuit's decision in Heidelberg, there's simply no due process right involved here. And even if there were a due process right, Mr. Hill's allegations were mere speculations. And the court's decision in Heidelberg, under the circumstances of this violation, the Prisoner Review Board's decision is in our appendix, at page five and six of our appendix. And it's very clear that the death sentence was only mentioned, as the appellate court correctly held, only mentioned in the introductory sentence of paragraph of their decision reciting the procedural history of the case. The board clearly went through every step of the way, including aggravating and mitigating factor in considering his request for parole in 2006. And they very explicitly based their decision on the fact that the seriousness of Mr. Hill's offense would result in depreciating the seriousness of his offense if parole were granted. So under Illinois statute, they could not grant parole. If there are no further questions, thank you. And we request that the court affirm the decision of the appellate court. Thank you. I'd like to just make a couple quick points in response to the appellee's first argument. The appellee's argued that the appellee's first argument is that the ex post facto clause does not apply, applies only to written laws. However, the fourth district's determination in Gansey and the United States Supreme Court stated that the presence of discretion in a system can, can trigger the ex post facto clause. And that demonstrates that the ex post facto clause does not apply only to written laws, and it can apply to secret or non-written laws. Second, Mr. Hill did sufficiently allege that he would be likely, that there's a significant risk of increased punishment by this changed standard. The fact that Mr. Hill was convicted, this is a question of fact. And Mr. Hill, although he was convicted of two, of two murders, there are several other indicators, or there are several other things in his record that could demonstrate that he was subject to a significant risk of increased punishment. The fourth district's determination in Gansey and the United States Supreme Court stated that the ex post facto clause does not apply, applies only to written laws, and it can trigger the ex post facto clause. The fifth district, Mr. Gansey in Gansey v. Washington was convicted of murder and attempted murder. And that's very similar to what Mr. Hill was convicted of in this case. In that case, Mr. Gansey did show that there was a sufficient, a sufficient risk of increased punishment, a significant risk of increased punishment. Mr. Hill in, has received numerous commendations from his employers within the department and several others that he's come in contact with. He intervened in 1975 during a resident takeover and discouraged several residents from killing three other inmates. He's got letters from the Cook County Department of Corrections stating that he's a model inmate and actually recovered a pistol that had been smuggled in by other inmates. Mr. Hill has letters from the Internal Investigation Unit commending him for volunteer time he spent remodeling a unit office in, in the prison. He's recognized several times for assistance in the health care unit. He also trained the inmate, he helped train the tactical unit at Stateville. And he has several letters from people stating that he has been rehabilitated and he also has parole plans. He has plans, has plans for parole that are good for him. And he has several letters from people stating that he has been rehabilitated and he has parole plans for parole that are that show that he can be useful on the outside. And at the end of the day, these are all discretionary things that the Board should take into account. However, Mr. Hill sufficiently alleged that, that just because he was convicted of two murders, there are other things in the record that show that he could be subject to a significant risk of increased punishment by this change in standard. And thank you, Your Honor. And we're requesting that you reverse the fifth district's decision and remand the case to the circuit court for findings to allow Mr. Hill to conduct discovery in this case. Thank you, counsel. Case number 110215, Hill v. Walker is taken under advisement as a defendant.